**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2329-20

PATRICK F. GALLAGHER,

     Plaintiff-Appellant,

v.

KRISTA WHITTEMORE,

     Defendant-Respondent.

_____

        Submitted October 7, 2021 – Decided October 21, 2021

        Before Judges Alvarez and Mitterhoff.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hunterdon County, Docket No. FD-10-0151-21.

        DeTommaso Law Group, LLC, attorneys for appellant (John J. Hays, II, on the briefs).

        Simon Law Group, attorneys for respondent (Joel Friedman, on the brief).

PER CURIAM

Plaintiff, Patrick Gallagher, appeals a March 23, 2021 order denying him 50/50 parenting time with his child, among other things. After a careful review of the facts and the applicable legal principles, we vacate the order and remand for a hearing before a different judge.

We discern the following facts from the record. Plaintiff and defendant, Krista Whittemore, are the parents of L.G., born in 2015. After the parties separated in May 2017, they maintained a voluntary 50/50 parenting time schedule. Plaintiff's mother watched the child while the parties worked,[1] and the remainder of the time was split between the parties. Generally, plaintiff's parenting time consisted of alternating Fridays and Saturdays, overnights every Sunday, overnights every Tuesday, and daytime visits every Wednesday from 2:15 p.m. until the child's bedtime. The child spent the balance of one week with defendant. The parties also established a holiday schedule.

The parties adhered to this arrangement from July 2017, to about July or August 2020. Defendant alleges that beginning July 6, 2020, plaintiff

---

[1] When the parties first separated, plaintiff's mother watched the child Mondays through Fridays from 7:30 a.m. to 5:00 p.m. A few months later, plaintiff's mother only watched the child Mondays through Wednesdays from 7:30 a.m. to 4:00 p.m.

A-2329-20

voluntarily relinquished the Tuesday overnight visits. Plaintiff denies giving up the Tuesday overnights.

In August 2020, plaintiff returned to work after being furloughed in March 2020 due to Covid. Plaintiff claims he attempted to formalize a new schedule that defendant allegedly agreed to orally, but when plaintiff presented defendant with it in writing, defendant refused to sign. Plaintiff contends that after defendant did not agree to the new schedule, defendant would not let plaintiff have an overnight with the child during the week, thereby limiting any overnight time to alternating weekends.

Additionally, in August 2020, the child began kindergarten at Clinton public school, and defendant placed the child at a local daycare while he attended remote school. The child has remote learning until 2:00 p.m., but he remains in daycare until defendant can pick him up after work.

As a result of these changes, in August 2020, plaintiff's parenting time was reduced to alternating Fridays and Saturdays and dinners every Monday and Tuesday. Defendant alleges that plaintiff voluntarily chose to forgo time with his son. Plaintiff alleges that defendant unilaterally restricted plaintiff's parenting time, partially out of a dislike for plaintiff's fiancée.

3

On January 25, 2021, plaintiff filed a verified complaint requesting joint custody and a 50/50 custody and visitation order. Defendant filed a counterclaim on February 11, 2021, requesting a custody and visitation order, child support, and health insurance coverage for the child. Plaintiff filed a reply on March 2, 2021.

At a telephonic hearing on March 23, 2021, the parties and their counsel appeared before the motion judge. The judge first summarized the parties' positions and then allowed counsel to make a statement for the record. After hearing from counsel, the judge inquired as to the child's school grade and the times in which the child is in school. The judge then went on to preface that any arrangement he decided on would be in effect for the foreseeable future, but that the parties would be responsible for adjusting the schedule as changes arose with the child's development. The judge explained to the parties that, "your best interest of [the child] are served by having the two of you communicate to one another," and told the parties to think about the ramifications of forcing the dispute to court instead of resolving it privately.

During the hearing the judge indicated that there were no expert evaluations or any best interest evaluations to examine. The judge reasoned that a best interest evaluation costs thousands and thousands of dollars and that he

4

did not think it was necessary in this situation. The judge stated that he "was not looking to make this decision, but that's [his] job." The judge also indicated that he was "a little bit at a disadvantage" because he did not "have a complete picture." When plaintiff objected to the fact that no plenary hearing had been held, the judge articulated that the order is without prejudice to plaintiff's ability to retain an expert and refile a modification application. Plaintiff attempted to calendar the matter for a hearing, regardless of whether plaintiff hired an expert, but the judge did not agree.

Ultimately, the judge determined that the couple would have joint custody with defendant being the primary residential custodian. The judge established a visitation schedule where plaintiff would have overnight parenting time every other weekend from Friday to Monday in addition to time from 2:30 p.m. to 6:30 p.m. two times a week on the weeks he had weekend visits and three times on the weeks where he did not have weekend visits. The judge reasoned that weekday overnights at plaintiff's residence would be disruptive to the child's school schedule and would not provide adequate stability for the child. Further, the judge ordered that the child remain in Clinton public schools, the parties follow the holiday schedule included in defendant's filing, which is roughly 50/50, and the parties notify one another if the child is going to spend more than

twenty-four hours outside of New Jersey. In terms of financing, the judge ordered that the parties must alternate claiming the child on their taxes every year, plaintiff will continue to provide medical coverage for the child, and the medical bills for the child prior to March 23, 2021 would be split 50/50.

On appeal, plaintiff raises the following issues for our consideration:

> POINT I
>
> THE TRIAL COURT ABUSED ITS DISCRETION BY ESTABLISHING A CUSTODY AND PARENTING TIME SCHEDULE WITHOUT HOLDING A PLENARY HEARING.
>
> POINT II
>
> THE TRIAL COURT FAILED TO MAKE THE REQUIRED FACT-FINDINGS PURSUANT TO N.J.S.A. 9:2-4(C) AND (F).
>
> POINT III
>
> THE TRIAL COURT'S ORDER SHOULD BE REVERSED AND REMANDED TO A NEW JUDGE FOR FURTHER PROCEEDINGS.

Our scope of review of child custody determinations is exceedingly limited. The conclusions of Family Part judges regarding child custody are "entitled to great weight and will not be lightly disturbed on appeal." DeVita v. DeVita, 145 N.J. Super. 120, 123 (App. Div. 1976); see also Sheehan v. Sheehan, 51 N.J. Super. 276, 295 (App. Div. 1958). Additionally, our review

6

of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998); see also Gnall v. Gnall, 222 N.J. 414, 428 (2015). We accord deference to the Family Part judges due to their "special jurisdiction and expertise in family matters." Cesare, 154 N.J. at 413. The judge's findings are binding so long as they are "supported by adequate, substantial, credible evidence." Id. at 412.

We will not "disturb the 'factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Id. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). "Only when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark' should we interfere to 'ensure that there is not a denial of justice.'" Gnall, 222 N.J. at 428 (quoting N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008)). We review de novo "the trial judge's legal conclusions, and the application of those conclusions to the facts." Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015) (quoting Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

A plenary hearing is required where there is a "genuine and substantial factual dispute regarding the welfare of the children, and the trial judge determines that a plenary hearing is necessary to resolve the factual dispute."

A-2329-20

Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007); see also R. 5:8-6 (requiring the court to "set a hearing date" if it "finds that the custody of children is a genuine and substantial issue"); Mackowski v. Mackowski, 317 N.J. Super. 8, 10-11 (App. Div. 1998) (requiring a plenary hearing where the teenaged child expressed preference to live with her father). As a threshold matter, the party seeking the plenary hearing "must clearly demonstrate the existence of a genuine issue as to a material fact before a hearing is necessary." Lepis v. Lepis, 83 N.J. 139, 159 (1980).

Here, the judge admitted that an expert report on whether there should be overnights during the week might be helpful. He stated that he was "at a bit of a disadvantage" because he did not "have a complete picture." The judge even indicated that if plaintiff retained an expert, he would hold a plenary hearing, but when plaintiff tried to schedule the matter for a plenary hearing, the judge refused to calendar the matter. Instead, the judge instructed plaintiff to refile. He then formulated a custody and parenting time schedule based entirely on his own opinion what was in the best interests of the child without holding a hearing to adduce supporting evidence.

Regardless, Rule 1:7-4 requires the court to "find the facts and state its conclusion of law thereon in all actions tried without a jury." R. 1:7-4.

8

"Meaningful appellate review is inhibited unless the judge sets forth the reasons for his or her opinion." Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990). In the context of child custody, "[t]he court shall specifically place on the record the factors which justify any custody arrangement not agreed to by both parents." N.J.S.A. 9:2-4(f). Relevant factors include:

> the parents' ability to agree, communicate and cooperate in matters relating to the child; the parents' willingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse; the interaction and relationship of the child with its parents and siblings; the history of domestic violence, if any; the safety of the child and the safety of either parent from physical abuse by the other parent; the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision; the needs of the child; the stability of the home environment offered; the quality and continuity of the child's education; the fitness of the parents; the geographical proximity of the parents' homes; the extent and quality of the time spent with the child prior to or subsequent to the separation; the parents' employment responsibilities; and the age and number of the children. A parent shall not be deemed unfit unless the parents' conduct has a substantial adverse effect on the child.
>
> [(N.J.S.A. 9:2-4(c)).]

In making its determination regarding custody, the court's paramount concern is the best interest of the child. V.C. v. M.J.B., 163 N.J. 200, 227-28 (2000); Kinsella v. Kinsella, 150 N.J. 276, 317 (1997). The court must

concentrate on the child's "safety, happiness, physical, mental and moral welfare." Fantony v. Fantony, 21 N.J. 525, 536 (1956). Consideration of the above factors helps guide the judge's analysis.

Here, the judge did not make sufficient findings of fact. The judge's only finding of fact was, "I am satisfied that until August of 2020 that there was 50/50 parenting time, but for whatever reason, it changed." The judge did not make any other findings of fact. In making his decision regarding custody and visitation, the judge simply stated, "I'm not going to grant the 50/50 parenting time at the present time. I don't know that that's necessarily what's in [the child]'s best interest." The judge discussed the child's school schedule and the child's need for stability, but he did not make any findings of fact as to why overnight visits on the weekend are disruptive, but two or three weekday afternoon visits are not.

Further, while the judge does not need to list all the statutory factors, there are some that could have been referred to in the judge's analysis. The judge ignored three factors relevant in this case; "the parents' ability to agree," "any history of unwillingness to allow parenting time not based on substantiated abuse," and "the extent and quality of the time spent with the child prior to or

subsequent to the separation."  Therefore, we are constrained to remand the case for further fact-finding.

Having determined that a new hearing is necessary, we also conclude that on remand the matter must be heard by a different judge.  We sparingly exercise our authority to direct re-assignment of a case on remand, but we do so when necessary "to preserve the appearance of a fair and unprejudiced hearing." Pressler & Verniero, Current N.J. Court Rules, cmt. 4 on R. 1:12-1 (2022). Because the judge in this case expressed strong feelings about deciding the matter through statements such as "I'm not looking to make this decision, but that's my job" and "I don't like dealing with these situations" and because he exhibited a clear opinion as to the appropriateness of weeknight overnights and whether 50/50 parenting is necessary, the matter should be assigned to another judge on remand.

Vacated and remanded for a new hearing before another judge.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2329-20